Deja vu, I'm seeing the same faces out there, but they are placed a little differently. We'll call United States v. Earl Hall III, then, and call upon Mr. Sorensen. Thank you, Your Honors. May it please the Court, my name is Quinn Sorensen. I now represent the appellant, Earl Hall. I'd like to reserve, respectively, three minutes for rebuttal if I may. Granted. Thank you. Starting off, as Your Honors mentioned, with the Supreme Court's decision in Ferro v. United States, it does indeed state the standard by which a severance motion should be judged, and it says that severance is warranted in one of two situations, and that is when prejudice would result from the joint trial, either by reason of compromising a specific trial right of one of the defendants or preventing the jury from making a reliable judgment as to guilt or innocence. You concede that in addition to the fact that we review decisions relative to severance subject to abuse of discretion, that it is demonstrably and historically unusual for this Court and most courts that I know of to find an abuse of discretion where severance has been denied. I think in terms of quantity, yes, you're indeed correct, Your Honor. Which leads me, then, to my next question. Do we need to perhaps dig a little deeper and develop a rule or some kind of exception, if you will, to abuse of discretion review of severance that takes into account where a privilege or, in particular in this case, a marital privilege is implicated? I think I'd have two responses to that, Your Honor. I think the marital privilege situation does present somewhat of a unique situation in that there is a definite privilege, and that is a right. That is a trial right, notwithstanding its definition of privilege or not. It's a right for the defendant. Let me stop you right there. Because in the last argument, as you heard, there was a firm position taken as to the legal distinction between right and privilege, which seems to me to have some real resonance. You've just really conflated the two, and I'm wondering how you can do that. I did indeed, Your Honor, and I think it's by usage of the Supreme Court's language in Zafiro, actually. Again, what the Supreme Court referred to in Zafiro is the denial of a specific trial right. And then it went on to describe what was an example of a denial of such a right, and it said specifically, such a right may exist when evidence that is inadmissible against one co-defendant is admitted against the defendant, notwithstanding that it would be inadmissible of a trial. So I believe in that situation what Zafiro and what other courts have referred to. Well, but wait a minute. The availability of the privilege does not automatically render the evidence that is at issue here inadmissible, does it? Quite right, Your Honor. And in this case, that's why the testimony, and that's what you just heard from Ms. Blunt's argument and the descriptions that were provided there, is that in this case there seems to be no doubt on the record that Ms. Blunt would have indeed invoked the spousal privilege. So do you retreat somewhat from your conflation of right and privilege? I believe in this situation what the right is referring to is if in a separate trial the defendant would have a right, not a fundamental constitutional, but a right to object to the admission of evidence, or the evidence would be inadmissible such that it could be excludable by the defendant. That is the right to which Zafiro is referring. All right. So we are talking about the difference between a fundamental right and some more generic form of a right that derives from the invocation or the decision to invoke a privilege in evidentiary court. Correct. And that's, again, coming from Zafiro in which the court spoke about irrelevant evidence being admissible and a defendant having a right to exclude irrelevant evidence. That flows from the rules of evidence, not necessarily from some constitutional privilege. And I think in this case, again, once you look at it from that perspective, there was no doubt on the record in this case that in a separate trial of Mr. Hall, Ms. Blunt would have invoked her right against testimony against her spouse. Her testimony, therefore, would have been inadmissible under Rule 501 of the rules of evidence. And had Ms. Blunt been called to testify, she could have refused and Mr. Hall could have objected to it. Would it have been inadmissible under a 401, 403 analysis? Again, that's the second part of this analysis. Even if you get passed and you ignore the spousal privilege, yes, Ms. Blunt's testimony, at least with respect to the allegations of abuse, of pressure, of domestic violence and of this threat, would have been absolutely inadmissible both under Rule 401 and 403, and therefore Mr. Hall would have been entitled I believe so, Your Honor. I think there is no basis on which to admit that particular evidence. Rule 4B, as I've read it thousands of times over the decades, has never suggested any absolutism to it. It's purely a discretionary matter for the court. And quintessentially the essence of undue prejudice is something that is subject to weighing and consideration by a judge on the spot. It is going to be a weighing process, but I think in this particular case, given the allegations of abuse of a direct threat issued by Mr. Hall to enforce Ms. Blunt to engage in his testimony, the President I understand that position, Mr. Sorensen. All I'm saying is what you just now said to me does not sound like absolutism. It is not absolute, but I believe there is no way to get around the rule in this case that this type of testimony would have been inadmissible. And in fact, you saw in this ability to testify as to these very facts because they were so prejudicial. So even in the context of a joint trial, there were limitations placed upon the evidence and the testimony that was allowable. I think in that particular circumstance, you see quite clearly that in a separate trial of Earl Hall, both because of the spousal privilege and also because of the 403-401 problems with relevance and prejudice, this testimony would have been excludable by Mr. Hall. And the denial of his ability to object to that evidence, the requirement that he object by virtue of a joint trial, satisfies that one circumstance set forth in Zafiro, denial of a specific trial right of the defendant by virtue of being joined. And I think then you can also go into the second circumstance noted by Zafiro, which is preventing the jury from making a reliable judgment of guilt or innocence. And that really gets to the heart of the matter in terms of the inflammatory nature of Ms. Blunt's testimony. We've already gone through it a little bit, so I won't bore the Court with that testimony again. But Ms. Blunt was quite clear. She said, he's told me that if I didn't make this call, he was going to kill us. Now, you can interpret he, the pronouns in that sentence, in any which way, but as it was said in that particular time frame, she was only referring to Mr. Hall, so the jury would have taken it that way necessarily. She said later that it might be... Aren't you maybe even making your job more difficult by saying that the jury would have taken it? I mean, isn't it sufficient for your purposes to say that there's a good chance that the jury would have inferred that he was he, Mr. Hall? You made exactly the next point I was going to make, which is that's all you need to find that there's a good chance of... I'm downright clairvoyant. Exactly. Thank you, Your Honor. No, tuna water. And then, so you have this also, and that inflammatory testimony, just as any bad character of prior criminal act, would have induced the jury to convict Earl Hall based only on the fact that he had abused his wife, and thereby prevented them from making a reliable judgment based on the evidence alone. Anything else he said that was prejudicial, that she said that was prejudicial, your client, that wouldn't have been admitted? Incredibly prejudicial, and not only in the inflammatory... Is there anything else? Yes, that's what I mean. That was the inflammatory testimony. There was also substantive inculpatory testimony that really satisfied the prosecution's burden by virtue of her testimony alone. She testified that Earl Hall, she had participated with Earl Hall on the phone call on behalf of Chanta Williams. She said that Earl Hall had forced her to do so, and she said that she could identify Earl Hall's voice on that phone recording, the same voice that appeared on other recordings. She testified further that Earl Hall had use of her phone whenever he wanted, and she said that that phone, which was the one to use to call other employment agencies and calls that were not recorded, he was using the phone at that time on those moments, and she was not. She testified further that he had access to her accounts, she did not, and that she had no knowledge of the transfers, but he would have in terms of his not only a participant in the crimes, but was the architect, the manager of them, and really satisfied almost every aspect of the prosecution's burden, when in fact the prosecution's evidence was quite weak on these points. The financial records to which government counsel earlier referred, showed only that funds, some funds, not all of them from the benefit application payments, flowed into accounts transferred by or controlled by Earl Hall, but they did not show that Earl Hall made those transfers or knew of the underlying criminal activity or was associated directly with it. And the phone recordings showed only that somebody had called in on those days and made inquiries regarding the applications. The only evidence that Earl Hall was participatory was the testimony of his former probation officer, who had experience only on a limited capacity with his voice from years ago, could not immediately identify when asked his voice, only upon prodding by prosecutors, and then after that, even at trial, the probation officer could not identify with certainty his voice on all of the recordings. So you had all of the prosecution's evidence showed at best that Earl Hall was connected indirectly to certain aspects of the scheme, not that he was the manager, controller, architect, or that he even knew about the entire scheme. Ms. Blunt's testimony filled in that critical gap. Direct testimony from his wife, compelling, direct, certain, to the jury with allegations of abuse, not only provided the evidence necessary to connect all the dots by the jury, but really provided them with an invitation to convict Mr. Hall in light of the allegations of abuse, which has already been noted. Unless the court has any further questions, I'll reserve the remainder of my time. Thank you. I'll be back. Thank you very much. Daniel. Please support your honors. Of $70,184 paid by Pennsylvania and Hawaii on six claims, approximately $44,000 was wound up in Earl Hall's bank account. Most of that money was made through check deposits, through smartphones, other amounts, approximately $18,000 went into that account via direct deposits. That's government's number 96. You can find it in the appendix to Mr. Hall's appendix, I should say. And we know that that account at JPMorgan Chase Bank, account number 8239 in the name of Earl Hall, was in fact an account controlled by this defendant. I'm missing something. It sounds like a jury closing. How does that help us? You're arguing prejudice or lack thereof, aren't you? Exactly, your honor. The bottom line here on all of this, on the duress issue, on the severance issue, is there prejudice to anyone? And the government's position is there isn't. If you remove Renita Blunt's testimony in its entirety from this record, there is more than sufficient proof of Mr. Hall's guilt on all of these charges. We know it was Earl Hall, the defendant's account, and it wasn't some third account controlled by a third party, because you know what happened to that money that went into the account? A substantial part of it went into Renita Blunt's account at JPMorgan Chase Bank. It was Earl Hall who got the money, Earl Maul who distributed it. There was redundant testimony. Edgar Leon identified his voice in the Chantal Williams call in the background. He also identified his voice in calls made by Charles Campbell to Pennsylvania, by Samuel Adams in calls made to Hawaii, and Chamarcus Moreland in calls made to the Pennsylvania State Agency. I think it was a grand total of 24 separate recordings that Mr. Leon identified as being Mr. Hall. This was proof positive of Mr. Hall's guilt, and if Renita Blunt never took the stand in that trial, the end result would have been the same. If the Court has any further questions, that's all I have to offer. You also had, if I recall, although – go ahead and let me get the name right – Chantal Williams, was that her name? Yes, Your Honor. She was not present, but you did have four live witnesses at trial. Yes, Your Honor. Who testified that they were real persons. Exactly. Whose benefits were – Yes, Your Honor. And our position there with the Chantal Williams aggravated identity theft conviction is there were three identifiers, first name, last name, date of birth, which identified a specific individual. And that California, that certified California driver's license proved that there was in fact a Chantal Williams with that date of birth. And with the admission of Renita Blunt that Chantal Williams was Earl Hall's cousin, both Renita Blunt and Earl Hall knew that those identifiers belonged to another real person in satisfaction of the Supreme Court's requirement in figure role. So there's no reason to disturb those aggravated identity theft convictions. So that I understand your position, or maybe this isn't your position, but I'll ask if you agree with it. This court could determine that the district court erred in not having severed these matters in the determination she made based on what she had before her at the time of her ruling not to sever. But downstream in viewing the totality of the record, we could find that notwithstanding that error, it was harmless because there was not prejudice. Exactly. And this circuit has already made that finding, Your Honor, or holding in the Ray Arrows case at page 287. Even if an abuse of discretion is found by this court in review of the district court's ruling, reversal is not necessary absent a clear demonstration of clear and substantial prejudice resulting in a manifestly unfair trial. How many counts were there? All together. Counts, i.e. different frauds, not counts lumping together the same. There were four different charges, mail fraud, money laundering, conspiracy to commit mail fraud. There are two conspiracy. And conspiracy to commit money laundering. And how many victims? Five? At trial, we limited our proof to six claims affecting three states, Pennsylvania, Hawaii, and gosh, to the state. I'm lost. But in the indictment, we charged 11 claims in three states in the indictment. At trial, we limited it to six claims in two states, Pennsylvania and Hawaii. Is the severance analysis the same for the husband and the wife in that the wife was asserting pre-trial that she was going to testify? Is it the same analysis? Yes, I think it is. Under Saffiro and this court's rulings, that trilogy in 2005, you have to focus on is there prejudice to the spouse who wants to testify? Is there prejudice to her right to take the stand? So you don't factor the marital privilege into the equation? Is it the same analysis? No, I think it is. I think it is included in it, Your Honor. And here's why. If the spouse who wants to testify really doesn't have, isn't going to offer exculpatory testimony. Exculpatory for who? For her. Okay. If she really isn't going to offer exculpatory testimony for her, then she's not really giving up anything. Why isn't putting the defense in the case of duress, why wouldn't that be exculpatory? Clearly she admitted the conduct. But if you admit conduct that has no legal consequence, why wouldn't that be a defense? Well, I think the court did take it all into consideration. But the bottom line is when Renita Blunt told the court that she was going to admit making this call, and she knew that it was in prevalence of the fraud, she was basically convicting herself. Well, forget about the step of the fraud. Let's say that rather than her actual testimony about he, whoever that he is or whoever they is, who constitute the he, forget that, said that, well, the time I made the call, you can't see obviously on the telephone, but he had a loaded revolver pointed right at my neck, back of my neck. And I think that those would have been different facts. I think there might have been perhaps a different result from Judge Ramble and her analysis. Okay, but you're conceding that the fact that one admits conduct which would be tantamount to admitting a crime is not necessarily the end of the ballgame if, along with that statement, there's a defense put into the case. I think if Judge Ramble would determine that Renita Blunt really had testimony to offer that would have exonerated her, she would have protected her spouse of privilege and would have ordered a separate trial, and that's the focus. Is she really offering up testimony that can exculpate her? If she is, then she's not going to force her into that decision to give up the privilege. But in this case, she found that her testimony didn't meet that threshold, and that's what the case law from the circuit in Sefero talks about, the factors to be considered, the degree, the likelihood of the defendant testifying, the degree that that testimony is going to be exculpatory, and the degree that it can be impeached, and the fourth factor is judicial conduct. So should Judge Ramble have elaborated on the pretrial filings and maybe had the witness proffer her testimony to the judge in an effort to really determine whether she was offering exculpatory testimony under your matrix? Judge Ramble did not write an opinion in support of her motion on severance. No, no, she adopted your logic. She did. She accepted the reasons stated in our brief, and these were the reasons that we set forth in our brief. But I would agree with you that it would have been better had she written a full opinion on it. Or had she developed a testimony? She could have asked Ms. Blunt to proffer her testimony to the court in anticipation of this ruling. I think the proffer was pretty detailed, Judge. It was a paragraph. It's in their supporting brief to the joint motion. What was cited to us was page 59 in the appendix, and it's one paragraph. Is there more? Give me a second, Your Honor. Page 8 of their supporting brief, and I'm sorry. Is that in the appendix? It is, Your Honor. The motion is at 33 in the Blunt appendix. I don't have a citation to the supporting brief. But in that supporting brief, starting on page 7 and page 8, there are several paragraphs that detail the extent of her testimony. And when the government responded to these motions, we responded assuming that all of that was true. That was our position. Any other questions? Thanks very much. Thank you, Your Honor. Thank you, Your Honor. Where's the prejudice? Well, I think the prejudice is clear. I mean, as we discussed earlier, the prejudice needs to be assessed based on what was admitted in this trial and what would not have been admissible in a separate trial of Mr. Hall. And in that case, it is essentially all of Ms. Blunt's testimony. But the government's arguing you take her off the table. Correct. There's an overwhelming amount of evidence to convict her. Correct. And what I heard the government argue — It was correct. No, no, that's what the government is arguing. And what the government was arguing, I think, is very telling. The government argued that it was sufficient, the other evidence was sufficient to convict Earl Hall. Now, I have made arguments, and I believe that the evidence was not sufficient for the reasons I previously described. But even if one assumes — Well, I think he said overwhelming. Yeah, he's not talking sufficient. And that's what I was going to say. I think I heard — well, I heard the — but even if — it's certainly not overwhelming. For the reasons I previously described, you have financial records that show that some money went into his accounts that came from these benefit checks, okay? You have the recorded phone conversations, and you have testimony from a probation officer with limited experience in his voice recognition who only testified that that — Limited experience about what? On his voice, on being able to — with his voice. He only knew of Earl Hall for a couple of years and only on a monthly basis. And he came in after being asked by prosecutors to identify the voice, being told that this is Earl Hall's voice on these recordings. Can you confirm? Then he did it. I think in this circumstance, there's no basis to doubt, and I don't think anybody would, well, possibly the government, that the jury was entitled to reject that evidence. At the very least, it wasn't overwhelming in the sense that we can say on the court of appeals level that there is no way a reasonable jury would have said, no, I don't believe that. I don't believe that this is — What about the bank records? What about the bank account? Again, the bank records show at best that some of the funds were transferred into the account owned by Earl Hall. So it's circumstantial evidence possibly connecting him with certain aspects of the crime, but it doesn't show that he had knowledge of the crime, that he had anything to do with the underlying events. It shows only that he may have known about them in certain respects. Again, the financial — When I see money show up in my account, I certainly take notice. Certainly. But that may have been payment for any — there may be other explanations for it. It may have been that Ms. Blunt controlled those accounts at that point, and until Ms. Blunt testified and said she didn't have control over those accounts, that was something the jury was entitled to believe. And that goes to my point, that this was evidence that the jury could have at least rejected and found that it was insufficient to have proof beyond a reasonable doubt. And in that circumstance, we need to take it further and say, was Ms. Blunt's testimony, did it add to the weight of the evidence against Mr. Hall? And that is clearly the case, both for its inculpatory value, and more importantly, perhaps, for its inflammatory value, which would have made the jury more likely to convict him based only on his other evidence of abuse rather than the evidence that was presented here. And I'd like to clear up, if I may, something that I — there's a bit of confusion, I believe, in terms of the standards to be applied in assessing a motion for severance in the government's case-in-chief, and that is, one, when is the motion assessed? Is it pre-trial or is it during trial? And I think in this case, this Court's decision in the United States versus Sandini is actually almost directly on point on this particular aspect. And in that case, there was a pre-trial motion for severance that was not renewed during trial, and the Court said, well, we're going to have to assess it based on the record that existed pre-trial, and we're going to do that based only on that evidence and see whether the district court — But why would you want a severance during the course of trial? You want a mistrial, don't you? Well, that's exactly right, but that's what this Court held. Going forward, if the motion is renewed, then the Court said, well, then we have to assess it in light of the evidence that was actually presented. But I understand what you're saying. It just seems to me to be an unnecessary redundancy because what we're really talking about, then, is a basis for a mistrial. Exactly, and I think we are talking about that, and I'm just using that as an illustration that in this case there is no basis to it, particularly because the pre-trial motion in this case — But we did in this case have, after the denial pre-trial, we do have a motion for severance downstream and alternatively a motion for mistrial. Exactly. So to the degree that it was being suggested that we don't consider any of the evidence at trial, that is not correct. Second, the description that perhaps the only thing in Zafiro says that you consider only whether the evidence is going to be testimony, is going to be exculpatory, I'm not exactly sure where that standard comes from. There are Third Circuit cases, Ervin included, that refer to that standard. Zafiro doesn't mention it at all. But Ervin and other cases apply that standard, but only in assessing claims in which the defendant argues that a co-defendant who is not going to testify at the joint trial would testify at a separate trial of the defendant, and that's the prejudice that the defendant in that case is arguing.  Because why would a co-defendant voluntarily testify at a separate trial when they refuse to testify at a joint trial on grounds of self-incrimination? And that's where you get this four-part test saying, well let's see whether they have any reason to actually testify in that separate trial. Here we have exactly the opposite situation. The defendant in this case, Earl Hall, is claiming not that the co-defendant would testify or wants him to testify, but the co-defendant wouldn't testify in the separate trial. And in this particular circumstance, there is every reason to credit that both because Renita Blunt would have a right against self-incrimination in that separate trial and because she would have the right of spousal privilege, which she had already invoked. So that four-part test really has no application here. The only question is whether Mr. Hall's trial rights or right to a fair trial were denied him by the joint trial and whether he was prejudiced thereby. And I think we've already established, at least as far as the argument is concerned, that a right was denied him, fair trial rights were denied him, and on the issue of prejudice, again, you go over to what was going to occur at that separate trial, and the evidence without Renita Blunt's testimony was perhaps at best sufficient to connect him indirectly to the crimes, but it certainly wasn't overwhelming and it didn't connect him to every aspect through direct testimony of his wife. And for that reason, the severance motion should have been granted, a mistrial should have been granted, the district court's decision was in error, should be reversed. Thank you. Unless the court has further questions. No questions. Thank you. Thank you. Thank you very much, counsel. We will take a short break.